WHICHER AND THOMPSON v. THE STEAMBOAT EWING.

1. **New trial:** FINDING OF REFEREE: VERDICT AGAINST EVIDENCE. The finding of a referee, in the consideration of a motion for a new trial, in an appellate court, stands upon the same ground as the verdict of a jury, and will not be disturbed unless it is manifestly against the evidence.

2. —— Duties of common carriers considered.

*Appeal from Muscatine District Court.*

THURSDAY, OCTOBER 11.

COMMON CARRIERS: DILIGENCE REQUIRED, &C.—On the 5th day of November, 1859, the plaintiff shipped at Muscatine, on board of the defendant, five hundred and eleven sacks of potatoes, to be delivered to their commission merchants at St. Louis. The bill of lading of that date acknowledges the receipt of the potatoes "in good order and condition," and engaged to deliver the same "without delay, in like good order, at the port of St. Louis," defendant reserving "the privilege of lightering, towing and reshipping." The potatoes were delivered at St. Louis in a badly damaged condition, having been frozen in the course of their transit. The consignee received them, sold them for the best attainable price (much less

than they would have brought if in good condition), and this action is instituted to recover the damages.

It is claimed by the plaintiff, that defendants are liable because they failed to deliver the articles in good condition, and also because the freezing happened in consequence of an unreasonable delay in transporting the same, and of the negligence of the defendant in respect thereto.

It is claimed by the defendant that the bill of lading contained an express clause, "not accountable for freezing;" that there was no delay except such as was unavoidable, and that it did not neglect to take due care of the articles.

The cause was once tried to a jury which was unable to agree. It was afterward submitted to a referee to try the whole cause, and to report facts and law.

The referee found for the plaintiff, and this finding was, *pro forma*, confirmed, and judgment rendered accordingly, from which the defendant appeals.

*Richman & Carskadden* for the appellants.

*Jacob Butler and Henry O'Connor* for the appellee.

DILLON, J.—Counsel do not essentially differ as to the law of the case. The case turns chiefly upon the facts.

The plaintiff caused the potatoes to be shipped through Block & Wallace, the agents of the steamboat line and

1. NEW TRIAL: finding of referee: verdict against evidence.

of the defendant at Muscatine. The plaintiffs intrusted to these agents blank bills of lading, to be signed by the proper officer of the boat. These were in the usual form, and did not contain the words exempting the boat from liability "for freezing." These were signed by the clerk, who inserted the clause, "not accountable for freezing," and retained the same. The plaintiffs called upon Block & Wallace for the bill of lading, and they filled up, but did not sign, a bill in the usual form, and delivered it to the plaintiffs.

This did not contain the clause in relation to freezing. These agents had no authority to sign bills of lading for the boat. If they knew of the clause in relation to freezing, they forgot to insert it in the unsigned bill which they delivered to the plaintiffs, and which they claim that they delivered only as a memorandum. Plaintiff did not know until after the arrival of the potatoes at St. Louis of the special clause. Under these circumstances the question arises, was the clause, "not accountable for freezing," binding upon the plaintiffs?

We will assume that it was; and yet we think that we would not, for other reasons, be justified in disturbing the finding of the referee. The referee found from the evidence that there was unreasonable delay in the transportation of the articles in question, and that owing to this and the carelessness of the boat the damage was caused. The evidence shows that the defendant received the potatoes November 5; that it arrived at Montrose (at head of lower rapids) the next day; that the water was too low for the boat to pass; that the passengers went by cars to Keokuk, and at once took the Metropolitan for St. Louis; that the potatoes were put on cars the next day for Keokuk, and stowed there in the station-house; that the other freight was brought over by lighters, which consumed some two days; that the potatoes were not shipped until the return trip of the Metropolitan (in connection with which the defendant run), and did not arrive in St. Louis until the night of the 13th of November, and were not delivered until the next day (the 14th). The testimony tends to show, and the referee found, that the potatoes were frozen very soon after the Metropolitan left Keokuk, probably on the night of the 12th. It is in evidence that there was another line of packets running between St. Louis and Keokuk, and it does not satisfactorily appear that the defendant made any effort to have the potatoes reshipped

on this line, without waiting for the return of the Metropolitan. The weather was mild, or at least not freezing cold, between the 5th· and the night the potatoes were frozen. As an original question, it admits of some considerable doubt whether the unreasonable delay or want of diligence on the part of the defendant has been satisfactorily established, especially if the burden of proof as to these facts rests upon the plaintiffs. Story Bail., § 573; Angell on Car., § 276. But it must be borne in mind that the question is not presented to us as an original one; but the finding of the referee is to be regarded as having the same force and weight as the verdict of a jury. Rev., §§ 3095, 3096. Upon the evidence, a jury had failed to agree. And upon the evidence as presented in the record, if the jury had found, as did the referee, that there was a want of due diligence in reshipping and in taking care of the potatoes (considering the advanced state of the season), we do not think such a conclusion would be so clearly against the evidence as would justify an appellate court to interfere.

For, although the bill of lading contained the words, "not accountable for freezing," and although it be conceded that this was binding upon the plaintiffs, yet this would not exempt the defendant from the duty to deliver the goods "without delay," and if it reshipped them, as it had privilege of doing, it should do so with all reasonable diligence. If it preferred to wait for boats of its own line rather than to ship by a rival line or make efforts to do so, it must take the risk, and pay the loss which an earlier reshipment or more adequate protection would have avoided.

Affirmed,